**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**JILL L. PUGH**                                                                                        **PLAINTIFF**

V.                            **NO. 4:14CV397-BD**

**CAROLYN W. COLVIN, Acting Commissioner,
Social Security Administration**                                       **DEFENDANT**

**ORDER**

Oral argument hearing was held on June 4, 2015. Following a review of the record and arguments presented by counsel, the Court announced its findings of fact and conclusions of law. This case is remanded to the Commissioner of the Social Security Administration under Sentence four of 42 U.S.C. § 405(g), for further administrative action.

This case needs additional vocational evidence to satisfy step five. At step five, the Commissioner determines whether work exists in the national economy that the claimant can do, in spite of his or her impairments. For claimants like Mr. Pugh, who have non-exertional limitations, the ALJ must consult a vocational expert to determine "whether jobs exist for a person with the claimant's precise disabilities." Under the Commissioner's regulation, the ALJ must ask the vocational expert for a reasonable explanation "for any 'apparent unresolved conflict' between vocational expert testimony and the Dictionary of Occupational Titles (DOT), before relying on the testimony in determining whether the claimant is disabled."

There are apparent unresolved conflicts in this case.  First, the ALJ misspoke, or the transcriber mistyped, with respect to the first hypothetical to the VE: "I would restrict this individual to <u>only overhead reaching</u>."  (SSA 63)(Emphasis added)  From the ALJ's opinion, it is reasonable to assume that the ALJ said, or meant to say, "I would restrict this individual to <u>occasional</u> overhead reaching."

But even assuming that to be a harmless mistake, in this circuit there is a more problematic inconsistency.  The second conflict assumes that the ALJ limited Mr. Pugh to only occasional overhead reaching.  When the ALJ asked the vocational expert about available work for a person with this (and other) limitations, the vocational expert identified only Fishing Reel Assembler (DOT 732.684-062) and Machine Tending (DOT 690.685-258), both of which are considered sedentary, unskilled work.

Identifying Fishing Reel Assembler created an apparent conflict with the DOT, however, because the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO) — a DOT companion publication — lists <u>frequent reaching</u> as a physical requirement for Fishing Reel Assembler.  The SCO lists Laminator (Machine Tending) as requiring <u>constant reaching</u>.  The SCO defines reaching as "[e]xtending hand(s) and arm(s) in any direction."  The ALJ addressed the possibility of a conflict by asking the vocational expert generally about consistency with the DOT (SSA p. 62), but under Eighth Circuit case law, that is not enough to resolve the conflict.

Although the requirements of a particular job may be more or less than the SCO's listed requirements, the SCO's reaching requirements served as the basis of two recent Eighth Circuit remands. *Moore v. Colvin*, 769 F.3d 987 (8th Cir. 2014); *Kemp v. Colvin*, 743 F.3d 630 (8th Cir. 2014).

In both cases, the ALJ limited the claimant's ability to reach, and the vocational expert identified a job that, according to the SCO, required frequent reaching. In both cases, the ALJ asked the vocational expert about the consistency of his testimony with the DOT, but the court of appeals found it insufficient for the vocational expert to merely confirm that his testimony was consistent with the DOT, even including the companion volumes. In both cases, the Eighth Circuit remanded because the record did not reflect whether the vocational expert or the ALJ recognized an apparent conflict.

In another recent case, the Eighth Circuit stated, the ALJ has "an affirmative responsibility to ask about 'any possible conflict' between [vocational expert] evidence and the DOT . . .." *Welsh v. Colvin*, 765 F.3d 926, 929 (8th Cir. 2014). That is, the record must reflect an explanation about why a person with reaching limitations could do a job that may require frequent reaching.

The apparent conflict was not resolved in this case. At the beginning of the vocational expert's testimony, the ALJ asked the vocational expert to advise whether his testimony was inconsistent with the DOT. The vocational expert answered, "I will." Under the case law, that response was insufficient to resolve the conflict, because the

record does not explain why a person who can reach overhead only occasionally can work as a Fishing Reel Assembler or Machine Tender.

There may be an explanation, but the record does not reflect the explanation. The record does not even reflect whether the vocational expert or the ALJ recognized the conflict. This case requires additional vocational evidence to resolve the conflict.

This case is remanded for the legal error, *i.e.*, an unresolved conflict between claimant Mr. Pugh's reaching limitations and the reaching requirements for the two occupations identified by the VE. On remand, the Commissioner's ALJ should obtain additional vocational evidence and resolve the conflict. The ALJ may obtain vocational evidence by questioning a vocational expert during a hearing or by written interrogatories. After obtaining vocational evidence, the ALJ should consider whether work exists that Mr. Pugh can do.

An excerpted transcript of the Court's findings and conclusions is attached.

So ordered, this 11th day of June, 2015.

_____
UNITED STATES MAGISTRATE JUDGE

```
                                                                    1

 1              IN THE UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF ARKANSAS
 2                       WESTERN DIVISION

 3

 4  JILL L. PUGH,
                                  .  Docket No. 4:14-CV-00397-BD
 5  PLAINTIFF,                    .
                                  .  Little Rock, Arkansas
 6  VS.                           .  June 4, 2015
                                  .  10:03 A.M.
 7  SOCIAL SECURITY ADMINISTRATION .
                                  .
 8  COMMISSIONER,                 .
                                  .
 9  DEFENDANT.                    .
    . . . . . . . . . . . . . . . .
10

11

12                        TRANSCRIPT OF

13   EXCERPTED ORAL FINDINGS OF FACT AND CONCLUSIONS OF LAW

14                  IN ORAL ARGUMENT HEARING

15            BEFORE THE HONORABLE BETH DEERE

16              UNITED STATES MAGISTRATE JUDGE

17

18

19  ELECTRONIC COURT RECORDER-OPERATOR:  Ms. Suzy Flippen

20

21  Transcription Service:         Robin Warbritton
                                   Post Office Box 262
22                                 Vilonia, AR  72173
                                   (501) 796-6560
23

24  PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING.

25  TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.
```

```
 1  APPEARANCES:

 2  For the Plaintiff:      Mr. Richmond Brownson
                            AAA Disability Advocates, PC
 3                          7906 East 55th Street
                            Tulsa, OK  74145
 4
    For the Defendant:      Ms. Melinda R. Newman
 5                          Social Security Administration
                            Office of the General Counsel
 6                          1301 Young Street
                            Suite A702
 7                          Dallas, TX  75202-5433

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                    P R O C E E D I N G S
2        (Call to order of the Court.)
3                         * * *
4        THE COURT:  All right.  I have been immersed in this
5  case for some time now.  And I think I know more about the
6  case at this moment than I ever will again, probably.  So, I'm
7  prepared to make findings.  And as I noted, I will -- we will
8  have this transcribed and, in addition, we'll send copies of a
9  CD of this hearing.  I know the Commissioner would like the
10 CD.  And do you also need it?
11       MR. BROWNSON:  Yes, ma'am.
12       THE COURT:  Okay.  Make sure we have -- we'll make
13 sure we have your address, or do you want it sent to Mr.
14 White?
15       MR. BROWNSON:  Yes, please, do send it to Mr. White.
16       THE COURT:  Okay.
17       MR. BROWNSON:  I think you have his e-mail, but I can
18 give you the address if you need it.
19       THE COURT:  Okay.  All right.  Well, here are my
20 findings and conclusions.  And these, from here forward, is
21 what we will have transcribed.  This is the case of *Jill
22 Lovell Pugh v. Social Security Administration*, number 4:14-CV-
23 397.  Today is June the 4th, 2015.
24       Jurisdiction is proper.  Mr. Pugh has fulfilled all
25 of the procedural prerequisites to filing a complaint in

1  federal court.  The parties have consented to my jurisdiction.
2  I've reviewed the parties' briefs, including the Plaintiff's
3  opening brief, the Commissioner's brief in response, and the
4  Plaintiff's reply brief.  I've also reviewed at least those
5  portions of the record that the parties have cited me to, and
6  in fact I've reviewed much more than that, including the
7  transcript of the hearing before the ALJ, as well as other
8  medical records that are in the file.
9        The standard of review is well settled.  That is,
10 does the record, when considered as a whole, contain
11 substantial evidence to support the Commissioner's decision
12 not to award benefits and did the Commissioner -- is there a
13 legal error, did the Commissioner commit legal error?
14       Mr. Pugh's appeal -- his appeal challenges the
15 Commissioner's finding that he was not disabled.  He filed for
16 disability benefits on March 27th, 2011, alleging disability
17 beginning June 27th, 2008.  His date of last insured is June
18 30, 2010.  And he, again, alleges the onset date of June 27th
19 of 2008.
20       As the parties have noted, much of the medical
21 evidence cited in the briefs is from after his last insured
22 date of June 30, 2010.
23       The ALJ did follow the familiar five-step analysis
24 that is set out in the Social Security Regulations.
25       Mr. Pugh raises several issues on appeal, many of

1  which are intertwined.

2       First, he argues that the ALJ failed to adequately
3  consider the medical opinions of treating consulting doctors,
4  and specifically argues that the ALJ should have adopted all
5  of Dr. Booe's and Dr. Dooley's opinions, rather than adopting
6  some.  Also, that the ALJ should have considered the opinion
7  of Dr. Alexander, which is -- I have on page 861 of the
8  record, although the parties agree that Dr. Alexander's
9  psychological opinion is outside the relevant time period, but
10 the ALJ considered it or said he considered it, and so, it is
11 a part of the record.

12      Second point Mr. Pugh argues is that the ALJ erred in
13 rejecting the Veterans Administration finding of disability.
14 The record reflects that the V.A. found Mr. Pugh disabled as
15 of December 22nd, 2011.

16      He also argues that the ALJ failed to adequately
17 consider his obesity, although the ALJ did find that as a
18 severe impairment, and that the ALJ failed to consider his
19 ability to handle and manipulate, and also that the ALJ failed
20 to resolve an apparent inconsistency in the jobs identified by
21 the Vocational Expert, considering Mr. Pugh's limited ability
22 for overhead reaching.

23      I think substantial evidence supports the ALJ's
24 analysis of the medical evidence.  He was not required to
25 adopt every jot and tittle of every consulting doctor's

report.  There was no error in not adopting the V.A.'s determination that Mr. Pugh is disabled.  The standards are very different between Social Security cases and Veterans Administration cases.  And the ALJ was certainly not required to adopt that finding as his own.

In addition, is the fact that the V.A. determination of disability runs from December 22nd, 2011, which is after his, Mr. Pugh's, date of last insured.

I find that the ALJ did adequately consider Mr. Pugh's obesity.  For one thing, he was not -- the obesity was found to be a -- a severe impairment.  I don't think that he was terribly obese.  I'm not looking at the numbers, but I think he weighed 230-something and is 5'11".  His Body Mass Index was high, but not -- not grossly high.  But the other thing is that the ALJ did consider obesity, he found it to be a severe impairment, and adequately accommodated the obesity with postural limits in the RFC.

I also find that he adequately accommodated Mr. Pugh's mental impairments.  There's evidence that supports the Plaintiff's argument on mental impairments, but there's also substantial evidence that supports the ALJ's finding, including the activities of daily living.  Mr. Pugh's records indicate that he cared for three small children.  At the time of the -- the hearing before the ALJ, he had just successfully gotten custody of his eight year old child.  So, considering

1  his activities of daily living, and I think that -- that the
2  ALJ gave adequate reasons for and adequate accommodation for
3  his mental impairments.  And this is -- also, I'll note here
4  that Dr. Alexander, who was the doctor who gave the head
5  medical records concerning his mental problems, his depression
6  and anxiety, the report occurs outside of the relevant time
7  period.
8         There is also substantial evidence to support the
9  lack of a limitation on Mr. Pugh's ability to handle and
10 manipulate.  Page 883 of the record, this is the report of the
11 consulting orthopaedic surgeon, who on page 883 found that his
12 manipulative -- that there were no manipulative limitations.
13        But then we get to the problem of the reaching,
14 overhead reaching, and herein lies the problem.  I find that
15 the case has to have additional vocational evidence to satisfy
16 step five of the five-step sequential analysis.  At step five,
17 the Commissioner must determine whether work exists in the
18 national economy that -- that Mr. Pugh could do in spite of
19 his severe and non-severe impairments.  For claimants like Mr.
20 Pugh, who also have non-exertional limitations, the ALJ, of
21 course, has to have a Vocational Expert to determine whether
22 jobs exist for a person with Mr. Pugh's precise disabilities.
23        Under the regulations, the ALJ must ask a Vocational
24 Expert for a reasonable explanation for any apparent
25 unresolved conflict between the Vocational Expert testimony

1  and the Dictionary of Occupational Titles, or DOT, before
2  relying on the testimony and determining disability.  In this
3  case, either the ALJ misspoke or the transcriber mistyped the
4  first hypothetical to the VE, quote -- here's the ALJ's quote
5  to -- or question to the Vocational Expert, quote:
6           "I would restrict this individual
7           to only overhead reaching."
8       That's from page 63 of the record.
9       From the ALJ's opinion, I assume he said or meant to
10 say:
11          "I would restrict this individual
12          to occasional overhead reaching."
13      But, even making this assumption, in this Circuit
14 there is another insurmountable inconsistency.  The conflict
15 flows from the ALJ's limitation on overhead reaching, assuming
16 he said "only occasional overhead reaching."  When the ALJ
17 asked the Vocational Expert about available work for a person
18 with that limitation, the Vocational Expert identified fishing
19 reel assembler and machine tending, both of which are
20 considered sedentary, unskilled work, with an SVP of 2.
21 Identifying fishing reel assembler created this apparent
22 conflict with the DOT because the Selected Characteristics of
23 Occupations, or the SCO, has to also be considered.  It's a
24 companion publication to the DOT.  And it lists frequent
25 reaching as a physical requirement for a fishing reel

assembler. The SCO lists also the laminator, which is the number of the job in the DOT, which the VE identified as machine tending, as requiring frequent reaching. The SCO defines reaching as, quote:

> "Extending hands and arms in any direction."

The ALJ addressed the possibility of a conflict by asking the Vocational Expert whether the jobs were consistent with the DOT. But under recent Eighth Circuit case law, that is apparently not enough to resolve the conflict.

Although a particular job requirement may be more taxing or less taxing than the SCO's listed requirements, the SCO's reaching requirements serve as the basis of two recent Eighth Circuit remands. In both cases, the ALJ limited the claimant's ability to reach, and the Vocational Expert identified a job that, according to the SCO, required frequent reaching. In both cases, the ALJ asked the Vocational Expert whether his testimony was consistent with the DOT, but that wasn't enough. And those two Eighth Circuit cases are *Moore v. Colvin*, 769 F.3d 987 (8th Cir. 2014) and *Kemp v. Colvin*, 743 F.3d 630 (8th Cir. 2014).

So, the Eighth Circuit held that it was not enough for the Vocational Expert to confirm that his testimony was consistent with the DOT, even including the companion volumes. In both cases, the Eighth Circuit remanded because the record

1  didn't reflect whether the VE or the ALJ recognized the
2  apparent conflict.
3           In another recent case, the Eighth Circuit said that
4  the ALJ has, quote:
5               "an affirmative responsibility to
6               ask about any possible conflict
7               between the Vocational Expert
8               evidence and the DOT."
9           That is, the record has to reflect an explanation
10 about why the person with reaching limitations could do a job
11 that may require frequent reaching.
12          At the beginning of the VE's testimony in this case,
13 the ALJ asked him to advise whether his testimony was
14 inconsistent with the DOT.  The expert answered:
15              "I will."
16          Under the case law though, in the Eighth Circuit
17 anyway, this response was insufficient to resolve the conflict
18 because the record doesn't explain why a person who can reach
19 overhead only occasionally can work a fishing reel -- as a
20 fishing reel assembler or a machine tender.  And that's
21 assuming that the ALJ did pose the hypothetical as only
22 occasional overhead reaching.  And as we know from the
23 transcript, that's another possible inconsistency.
24          There's probably an explanation, but the record
25 doesn't reflect the explanation.  And the record doesn't even

1  reflect whether the VE or the ALJ recognize this conflict.
2          And again, this is fairly recent -- not fairly --
3  very recent case law and I certainly can't fault the ALJ for
4  not -- for not predicting this refinement in case law,
5  because, of course, his opinion was rendered in November of
6  2012 before these recent cases were decided.
7          The case is remanded for the legal error that I've
8  just discussed; that is, the unresolved conflict between the
9  claimant, Mr. Pugh's, reaching limitations and the reaching
10 requirements for the two occupations identified by the
11 Vocational Expert.
12         On remand, the Commissioner's ALJ should obtain
13 additional vocational evidence, resolve the conflict.  The ALJ
14 may obtain vocational evidence by questioning a Vocational
15 Expert during a hearing or by written interrogatories.  And
16 after obtaining that evidence from the Vocational Expert, the
17 ALJ should consider whether work exists that Mr. Pugh could do
18 in spite of his severe impairments.
19         I want to thank the attorneys for the briefs.  And
20 this is, as noted, a very long record.  The arguments were
21 exceptionally good.  And I'm most appreciative of your
22 efforts.
23         Is there anything further, Mr. Brownson?
24         MR. BROWNSON:  Would you spell the name of the
25 plaintiff in the first case that you cited?

1   THE COURT: Yes.
2   MR. BROWNSON: I didn't catch that.
3   THE COURT: Oh, okay. The first one is *Moore*, M-O-O-
4   R-E.
5   MR. BROWNSON: Okay. Thank you.
6   THE COURT: And the second one is *Kemp*.
7   MR. BROWNSON: Thank you, Your Honor.
8   THE COURT: Okay. Anything further, Ms. Newman?
9   MS. NEWMAN: No, Your Honor. Thank you.
10  THE COURT: Yes. You did an excellent job, as
11  always. And we will get an order entered when the findings
12  and conclusions have been transcribed, and also get a CD for
13  each of you of today's proceeding.
14  Thank you. And we're off the record.
15  MR. BROWNSON: Thank you.
16  MS. NEWMAN: Thank you.
17  (Adjournment at 11:12 a.m.)
18  ELECTRONIC SOUND RECORDING CERTIFICATION:
19  I, court approved transcriber, certify that the foregoing is a
20  correct transcript from the official electronic sound
21  recording of the proceedings in the above-entitled matter.
22  
23  _____    June 9, 2015
    Signature of Approved Transcriber   Date
24
25  Robin Warbritton
    Typed or Printed Name